Slip Op. 10-124

## UNITED STATES COURT OF INTERNATIONAL TRADE

UNITED STATES,

Plaintiff,

v.

CALLANISH LTD.,

Defendant.

Before:  Timothy C. Stanceu, Judge

Court No. 03-00658

## OPINION AND ORDER

[Denying plaintiff's application for a judgment by default against defendant in the amount of $17,734,926]

Dated: November 2, 2010

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Domenique Kirchner*); *Kevin B. Marsh*, Bureau of Customs and Border Protection, of counsel, for plaintiff.

Stanceu, Judge:  Following the court's opinion and order in *United States v. Scotia Pharmaceuticals Ltd.*, 33 CIT __, Slip Op. 09-49 (May 20, 2009), plaintiff filed an amended complaint to recover a civil penalty under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1988) ("Section 592") against defendant Callanish Ltd. ("Callanish") in the amount of $17,734,926.  Am. Compl. ¶¶ 91-93.  Plaintiff's claim arises out of fifty-two consumption entries of merchandise, made between September 1, 1988 and March 24, 1992, that plaintiff alleges to have been capsules of "evening primrose oil" ("EPO"), a substance used as a food additive that could not be imported lawfully at the time of the entries at issue. *Id.* ¶¶ 11-12, 91-93.  After defendant failed to appear by licensed counsel and failed to plead or otherwise

**Court No. 03-00658**                                                                                    **Page 2**

defend itself within twenty days of being served with the summons and the amended complaint,

the Clerk of this Court, pursuant to USCIT Rules 12 and 55, entered Callanish's default.  Entry

of Default 1.

On May 19, 2010, plaintiff applied for a judgment by default against Callanish in the

amount of $17,734,926 pursuant to USCIT Rule 55(b).  Pl.'s Req. for Default J. as to Callanish

Ltd. 1-2 ("Pl.'s Req. for Default J.").  Upon review of the amended complaint and plaintiff's

application, the court holds that plaintiff has not established its entitlement to the default

judgment it seeks against Callanish because plaintiff has failed to set forth as a well-pled fact the

domestic value of the merchandise plaintiff alleges to have been imported fraudulently.  The

court, therefore, will deny without prejudice plaintiff's application for a default judgment.

### I. BACKGROUND

A.  Alleged Fraudulent Scheme to Unlawfully Import Evening Primrose Oil

The amended complaint alleges that beginning on February 12, 1985, the Food and Drug

Administration ("FDA") issued a series of import alerts announcing that evening primrose oil

could not be sold lawfully in the United States without FDA approval, that this substance did not

have FDA approval, and that all import shipments of EPO offered for entry into the United States

were to be detained by Customs and Border Protection ("Customs") and naming Efamol

Research, Inc. as a seller of EPO.  Am. Compl. ¶ 5; Pl.'s Req. for Default J. 5; Admin. R. Doc.

Nos. 70-75.

The amended complaint further alleges that during the period from September 1, 1988 to

March 24, 1992, Callanish introduced, or aided and abetted another to enter or introduce, into the

United States merchandise consisting of capsules of EPO under cover of fifty-two consumption

entries filed at various ports of entry throughout the United States by means of material and false

acts, statements and/or material omissions, in violation of Section 592.  Am. Compl. ¶¶ 11-12,

91-93; Admin. R. Doc. Nos. 1-12 (Declaration of Timothy F. Quinn, Special Agent, U.S.

Immigration and Customs Enforcement).

      Plaintiff identifies several main participants in the alleged fraudulent scheme: (1)

Murdock Healthcare, "the real buyer and importer" (a U.S. company doing business under

several names such as Health Products International ("HPI"));[1] (2) Chester Lockard, the "straw

buyer and importer of record" in the United States who served as president of the two U.S.

companies, Pine Lawn Farms, Inc., and Genesis II of Mid-America, that paid the duties and fees

for EPO shipments and then billed HPI for the shipments, plus commission;[2] and (3) three

subsidiaries of Scotia Pharmaceuticals Ltd. ("Scotia Pharmaceuticals"), a British company:

Efamol Ltd. (the British distributor of EPO), Efamol Research, Inc., the successor of which is

Quantanova, Canada, Ltd. ("Quantanova"), and defendant Callanish, a British corporation with a

business address at Breasclete, Isle of Lewis, Scotland, United Kingdom, that manufactured and

shipped the EPO to the United States.  Am. Compl. ¶¶ 6-10; Pl.'s Req. for Default J. 3-4.

---

     [1] As a consequence of Health Products International's ("HPI") participation in the fraudulent scheme at issue in this action, HPI and its general counsel, Loren Israelson, pleaded guilty in the Eastern District of Missouri in 1996 to violations of 18 U.S.C. § 542 (2006) (entry of goods (EPO) by means of false statements).  Am. Compl. ¶ 14.  HPI employee David Anderson pleaded guilty to a violation of 19 U.S.C. § 1304 (concealing information regarding the marking of imported goods).  *Id.*

     [2] As a consequence of his participation in the fraudulent scheme at issue in this action, Chester Lockard, president of Pine Lawn Farms, Inc., pleaded guilty to a violation of 18 U.S.C. § 542 for fraudulently importing EPO.  Am. Compl. ¶ 14.

Specifically, plaintiff alleges that Callanish, as the party responsible for shipping each of the fifty-two entries of EPO to the United States, performed the following acts in furtherance of the fraudulent scheme: (1) "Callanish followed HPI's instructions to ship the EPO . . . and not to list or describe the merchandise as EPO;" (2) "Callanish provided false invoices to HPI showing the buyer as Pine Lawn Farms rather than HPI;" and (3) "Callanish, together with Scotia Pharmaceuticals Ltd[.], and Quantanova, Canada, Ltd., used different invoices for the same shipment, an invoice accurately identifying the merchandise as EPO was sent to HPI, and a second invoice was sent to Mr. Lockard's companies, Pine Lawn Farms or Genesis II, which disguised the EPO in the shipments."  Am. Compl. ¶ 16.  Plaintiff claims that the documents submitted to Customs for the fifty-two consumption entries of EPO "contained materially false statements," Am. Compl. ¶¶ 19-22, and that "Callanish shipped the EPO with knowledge that the importation of the EPO into the United States was illegal and that the EPO would be entered under cover of false documents," Am. Compl. ¶ 24.

<u>B.  Procedural History</u>

The procedural background of this litigation is presented in the court's opinion and order in *United States v. Scotia Pharmaceuticals Ltd.*, 33 CIT __, __, Slip Op. 09-49, at 4-6, and is further supplemented herein.

On May 20, 2009, the court held that plaintiff had not established its entitlement to the judgment by default that it then sought against defendant Callanish for a civil penalty under 19 U.S.C. § 1592.  *United States v. Scotia Pharmaceuticals Ltd.*, 33 CIT at __, Slip Op. 09-49, at 13-14.  The court denied plaintiff's application for default but also allowed plaintiff the opportunity to amend its complaint.  *Id.* at __, Slip Op. 09-49, at 14.  Because plaintiff had not

effected service upon defendants Scotia Pharmaceuticals and Quantanova, the court granted

plaintiff's request to dismiss the action as to those defendants.  *Id.*

On July 31, 2009, plaintiff filed its amended complaint.  Am. Compl.  On May 17, 2010,

after plaintiff successfully effected service of process upon Callanish, defendant again failed to

appear by licensed counsel and failed to plead or otherwise defend itself within twenty days of

being served with the summons and amended complaint, and the Clerk of this Court, pursuant to

USCIT Rules 12 and 55, entered Callanish's default.  Pl.'s Req. for Default J. 1; Entry of

Default 1.

On May 19, 2010, plaintiff applied for a judgment by default against Callanish pursuant

to USCIT Rule 55(b).  Pl.'s Req. for Default J. 1.  Plaintiff seeks a penalty equal to what it

alleges to be the domestic value of the EPO entered on the fifty-two entries, $17,734,926.  *Id.* 2.

## II. DISCUSSION

Because defendant Callanish has been found to be in default, the court accepts as true all

well-pled facts in the complaint.  *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.

1981).  An entry of default, however, is not sufficient to entitle plaintiff to the relief it seeks.  *See*

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A]

defendant's default does not in itself warrant the court in entering a default judgment.").  Even

after an entry of default, "it remains for the court to consider whether the unchallenged facts

constitute a legitimate cause of action, since a party in default does not admit mere conclusions

of law."  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and*

*Procedure* § 2688, at 63 (3d ed. 1998); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206-08

(vacating district court's entry of default judgment because the pleadings were insufficient to

support the judgment).  "There must be a sufficient basis in the pleadings for the judgment

entered."  *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  Accordingly, the court must decide

whether the well-pled facts in plaintiff's complaint, and deemed to be admitted by Callanish as a

result of the entry of default, are sufficient to establish liability for a violation of Section 592(a)

that is grounded in fraud and sufficient to establish the amount of the civil penalty sought by

plaintiff.

        Under Section 592(a)(1)(A), it is unlawful for any person to enter, introduce, or attempt

to enter or introduce any merchandise into the commerce of the United States by means of

material and false documents, statements, or acts or material omissions, whether by fraud, gross

negligence, or negligence.  19 U.S.C. § 1592(a)(1)(A)(i)-(ii).  The statute also prohibits the

aiding and abetting of another to commit a violation of Section 592(a)(1)(A).  *Id.*

§ 1592(a)(1)(B).  In an action brought to recover a civil penalty under Section 592, the amount of

the penalty is determined by the court *de novo*.  *Id.* § 1592(e).  The statute provides that a

violation of Section 592(a) based on fraud "is punishable by a civil penalty in an amount not to

exceed the domestic value of the merchandise."  *Id.* § 1592(c)(1).  Therefore, the domestic value

of the merchandise is a fact essential to the court's *de novo* determination of the amount of any

penalty.  Plaintiff, therefore, must allege the domestic value of the merchandise as a well-pled

fact in order to obtain a default judgment in this case.

        The amended complaint seeks a penalty of $17,734,926, which plaintiff alleges to be the

domestic value of the fifty-two consumption entries of EPO that it alleges to have been

fraudulently imported in violation of the statute.  Am. Compl. ¶ 93.  The complaint lacks any

well-pled fact concerning the domestic value of the merchandise or how that value was

**Court No. 03-00658**                                                                 **Page 7**

determined.  Plaintiff provides only the conclusory statement of the domestic value of the

imported EPO.[3]  The mere allegation of an amount offered as the "domestic value," absent

anything more, does not constitute a well-pled fact.  *See Dudnikov v. Chalk & Vermilion Fine*

*Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (defining well-pled facts as those that are

"plausible, non-conclusory, and *non-speculative*" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555-56 (2007) (emphasis added))).  Absent such a well-pled fact, the court is unable to enter

a judgment by default in this case, and plaintiff's application must be denied.  The court will

allow plaintiff the opportunity to move for leave to amend its complaint.

### III.  CONCLUSION AND ORDER

From its review of the amended complaint and of plaintiff's application for judgment by

default, the court concludes that plaintiff has not established its entitlement to a judgment by

default against defendant Callanish for a civil penalty under 19 U.S.C. § 1592.  Upon

consideration of all papers and proceedings herein, it is hereby

**ORDERED** that plaintiff's application for judgment by default against defendant
Callanish be, and hereby is, DENIED without prejudice; and it is further

**ORDERED** that unless plaintiff moves within sixty (60) days of the date of this Opinion
and Order for leave to file an amended complaint, plaintiff, upon entry of a further order, shall be
required to show cause why a judgment should not be entered dismissing this action.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated:  November 2, 2010
New York, New York

---

[3] From exhibits to plaintiff's application for judgment by default, it appears that the
amount of the "domestic value" was derived by doubling the amounts for entered value as set
forth on entry summaries for the importations that are the subject of this action.  *See* Admin. R.
Doc. Nos. 165-531.